WALLINGFORD STAFFORDSHIRE COMMONS ASSOCIATION, INC. *v.* STAFFORDSHIRE ASSOCIATES ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 324301
NEW HAVEN

Memorandum filed April 8, 1992

*Reiner & Reiner,* for the plaintiff.

*Lendler & Molina,* for the named defendant and the defendant Southwest Village of Farmington Limited Partnership.

*Fazzone, Nuzzo & Baillie,* for the defendant Group Concepts, Inc.

*Arthur A. Hiller,* for the defendant town of Trumbull.

No appearance for the defendant Associated Architects.

DeMayo, J. The defendants have moved to discharge the notice of lis pendens placed on the land records by the plaintiff when this action was instituted. The defendants claim that the lis pendens statutes, General Statutes § 52-325 et seq., are unconstitutional. They rely heavily on the decision of the United States Supreme Court in *Connecticut* v. *Doehr,* 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991).

On November 6, 1991, the plaintiff, Wallingford Staffordshire Commons Association, Inc., filed an eight count complaint against the defendants, Staffordshire Associates Limited Partnership (SALP), Southwest Village of Farmington Limited Partnership (SVFLP), Group Concepts, Inc., and Associated Architects, P.C. The plaintiff is an association of the unit owners of the condominium complex called Staffordshire Commons. SALP is the declarant of the condominium. SVFLP is a partnership consisting of the same general and limited partners as those of SALP. Group Concepts is the managing agent of the condominium hired by SALP, and Associated Architects is the firm that prepared plans for the construction of the condominium.

In count one, the plaintiff alleges that the common hallway, staircases, erosion and sedimentation controls, roofs, solarium units, decks, doors and vents, among other things, were defectively constructed, and that, therefore, SALP breached the implied warranties of quality as set forth in General Statutes § 47-275 (b). The second count contains allegations that SALP breached its express warranties that (1) there would be adequate lighting in certain common areas and (2) there would be no more than 151 units in the condominium when construction was completed. In count three, the plaintiff alleges that SALP violated the requirements of the Common Interest Ownership Act, which provides for delivery of property and documents, including site plans, drawings, and an accounting for association

funds, by the declarant to the association of unit owners. In the fourth count, the plaintiff alleges that SALP collected from each purchaser of a unit a fee equal to two months common association fees, which was to be paid to the association as a reserve for future repairs, but that SALP failed not only to turn the funds over to the association, but also to account for them. In count five, the plaintiff alleges further that the conduct alleged in the first four counts constitutes a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

Count six contained allegations against the defendant Associated Architects. The case as to this defendant, however, was withdrawn on January 9, 1992.

Count seven contains allegations (1) that SALP fraudulently conveyed thirty-four units to SVFLP whose general and limited partners are identical to those of SALP, (2) that SVFLP knowingly and willingly participated in the transfer and (3) that the transfer rendered SALP insolvent and unable to meet its obligations to the plaintiff.

In count eight, the plaintiff alleges that Group Concepts, was responsible for collecting and accounting for common charges, but failed to account for the funds collected.

The plaintiff seeks damages, an accounting from SALP and Group Concepts of all funds collected, an order requiring SALP to turn over all documents required to be delivered to the plaintiff by law, and an order voiding SALP's transfer of condominium units to SVFLP.

For the purposes of this hearing, counsel have stipulated that the court may assume the truth of the allegations set forth in count seven as well as the underlying indebtedness between the plaintiff and SALP.

SVFLP argues that the lis pendens statute deprives it of property without due process of law in violation of both the federal and state constitutions because it provides for neither a hearing nor any review by an independent magistrate prior to recording, but provides for a hearing only after recording. SVFLP asserts that this procedure of allowing a plaintiff to file a notice of lis pendens based only on the plaintiff's subjective belief that it is appropriate deprives the defendant of property without due process of law.

In support of its argument, SVFLP cites *Connecticut* v. *Doehr,* supra, 10, in which the United States Supreme Court applied the analysis set forth in *Mathews* v. *Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), to hold Connecticut's prejudgment attachment statute unconstitutional because it did not provide for a predeprivation hearing. SVFLP contends that the property interest affected by a notice of lis pendens is the same as that affected by an attachment. SVFLP further contends that the risk of an erroneous deprivation is greater in the present case than in the case of an ex parte prejudgment attachment because while a party seeking attachment is required to verify under oath the particulars of the claim, and a judge is required to review it, a party seeking to record a notice of lis pendens is subject to no such requirement and "enjoys an unfettered right . . . to record a notice. . . ." SVFLP asserts further that the interests of the present plaintiff are no different from the interests of the party seeking attachment in *Connecticut* v. *Doehr,* supra, and that the court found in that case that the plaintiff did not have an interest that outweighed the defendant's property interest. SVFLP argues, therefore, that the holding in *Connecticut* v. *Doehr,* supra, should apply to the present case.

SVFLP also argues that the court in *Doehr* rejected the holding of the Connecticut Supreme Court in

*Williams* v. *Bartlett,* 189 Conn. 471, 457 A.2d 290, aff'd, 464 U.S. 801, 104 S. Ct. 46, 78 L. Ed. 2d 67 (1983), that the lis pendens statute is constitutional. First, SVFLP argues that when the court in *Doehr* held that attachment affects significant property interests, it rejected the view of the court in *Williams* that an interference with an owner's right to sell or mortgage property as a result of the recording of a notice of lis pendens is a de minimus property interest. Second, in the view of SVFLP, the finding in *Doehr* that a hearing held after an attachment would not cure the temporary deprivation that a predeprivation hearing might have prevented supersedes the finding in *Williams* that a prompt hearing after the recording of a notice of lis pendens eliminated the risk of erroneous deprivation. Third, SVFLP interprets *Doehr* as stating that the importance of the function an attachment serves in providing security for a judgment is outweighed by the property owner's interests. SVFLP maintains that this finding supersedes *Williams* v. *Bartlett,* supra, which SVFLP interprets as stating that the notice of lis pendens serves an important function in providing security for payment of a claim pending final resolution of the case. Fourth, SVFLP contends that the court in *Doehr* rejected the view in *Williams* that the state has an important interest in minimizing litigation.

Finally, SVFLP contends that the lis pendens statute is unconstitutional because the probable cause standard provided for in General Statutes § 52-325b is vague.

The plaintiff argues that the present case is controlled by *Williams* v. *Bartlett,* supra, and not by *Connecticut* v. *Doehr,* supra. The plaintiff notes that *Williams* was summarily affirmed by the United States Supreme Court. The plaintiff notes further that the concurring opinion of Justices Rehnquist and Blackmun in *Doehr* distinguishes notices of lis pendens from attachments.

The plaintiff argues that the application of the analysis in *Doehr* does not justify a finding that the lis pendens statute is unconstitutional because the holding in *Doehr* turned on the facts that the case was based on a tort claim, that there was no showing of exigent circumstances, that the prejudgment remedy statute required no bond from the plaintiff, and that the plaintiff had no preexisting interest in the property attached. The plaintiff asserts that in the present case, the alleged fraudulent conveyances constitute an exigent circumstance because they deprive the plaintiff of any means of collecting on a potential judgment. Moreover, the plaintiff maintains, the real estate is the only asset the defendant has, and if the lis pendens is discharged, the defendant would have the ability to transfer all of the remaining units to a bona fide transferee, thereby defeating the plaintiff's claim.

The plaintiff also maintains that recording a notice of lis pendens contains a far narrower remedy than the attachment statute does in that the lis pendens statute applies only to claims involving the real property itself, while an attachment may be employed in any type of civil action in which money damages are sought. The plaintiff further asserts that a preexisting interest is an independent basis for justifying a prehearing encumbrance.

The due process clauses in both the state and federal constitutions have the same meaning. *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 170 Conn. 155, 159, 365 A.2d 393 (1976). As a threshold matter, it must be determined whether there has been a taking or deprivation by state action. The requirements of procedural due process are triggered only if there has been a taking or a deprivation of a protected interest by the state. *Chrysler Corporation* v. *Fedders Corporation,* 670 F.2d 1316, 1321 (3rd Cir. 1982), citing *Board of Regents* v. *Roth,* 408 U.S. 564,

569, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Only after it has been determined that a deprivation by state action has occurred, may an analysis of what process is constitutionally due be made. The Connecticut Supreme Court has held that even though a notice of lis pendens does not deprive property owners of the right to occupy and use their land, it interferes with the alienability of the land enough to constitute "a sufficient deprivation so as to invoke the protections of procedural due process." *Williams* v. *Bartlett,* supra, 478 n.5, citing *Kukanskis* v. *Griffith,* 180 Conn. 501, 509, 430 A.2d 21 (1980). The court also noted that sufficient state action was created by the fact that the notice was required to be filed with the town clerk. Id. Since the Connecticut Supreme Court has found that a notice of lis pendens results in a deprivation by state action, the question of what procedures the state is constitutionally required to provide may be addressed.

An analysis of whether an interference with a property right is sufficient to trigger due process concern is different from an analysis of what weight that property interest should be accorded in determining what process is due.

Due process " ' is not a technical conception with a fixed content unrelated to time, place and circumstances.' " *Mathews* v. *Eldridge,* supra, 334, quoting *Cafeteria Workers* v. *McElroy,* 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961). "[I]t is a flexible doctrine, requiring 'such procedural protections as the particular situation demands.' " *Williams* v. *Bartlett,* supra, 477, quoting *Morrissey* v. *Brewer,* 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). Generally, due process requires a hearing to be held " 'at a meaningful time and in a meaningful manner.' " *Kukanskis* v. *Griffith,* supra, quoting *Armstrong* v. *Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965).

In *Mathews* v. *Eldridge,* supra, the United States Supreme Court set forth a three part inquiry to determine what process is due when the government seeks to effect a deprivation. While the dispute in the present case is between private parties rather than between an individual and the government, the analysis of *Mathews* would still apply. In *Connecticut* v. *Doehr,* supra, 10–11, the court noted that because the prejudgment remedy statutes apply to disputes between private parties rather than between an individual and the government, the three part inquiry to be made, while similar to the inquiry made in *Mathews,* has a different focus. The *Mathews* inquiry, therefore, was modified in *Connecticut* v. *Doehr,* supra, 11, to require "first, consideration of the private interest that will be affected by the [notice of lis pendens]; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third . . . principal attention to the interest of the party seeking the [notice of lis pendens], with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections."

The Connecticut Supreme Court applied this analysis when it directly addressed the issue of the constitutionality of the lis pendens statute in *Williams* v. *Bartlett,* supra, 479, where it stated that "[c]ertainly the deprivation caused by the notice of lis pendens is considerably less severe than a total deprivation of the property interest, where due process mandates a preseizure hearing. . . . Nor can the interest at stake . . . be construed as a deprivation of property essential to meet the owner's basic needs." (Citations omitted.) Thus, in *Williams* v. *Bartlett,* supra, 480, the court held that the lis pendens statute that provides for a postfiling hearing meets the minimum requirements of procedural

due process "[i]n view of the limited effect caused by the filing of the notice of lis pendens upon the property of the record owner, when balanced against the interests of the state and the party utilizing the lis pendens procedure . . . ." It is the court's conclusion that *Doehr,* did not overrule *Williams,* and that *Williams* governs the present case for the reasons set forth in the following analysis.

The first prong of the inquiry requires the consideration of the private interest affected by the notice of lis pendens. This consideration should be distinguished from an inquiry into when a taking or a deprivation triggers due process concerns. While the defendant argues that *Doehr* applies to the present case, the court finds that decision distinguishable. *Connecticut* v. *Doehr,* supra, involved an ex parte application for a prejudgment attachment of real estate pursuant to General Statutes § 52-278e (a) (1) in connection with a civil action for assault and battery. Section 52-278e (a) (1) allowed such attachments without prior notice or hearing upon an applicant's verification that there was probable cause to sustain the validity of the claim.

An attachment involves the total deprivation of a property interest. It is defined as the "act or process of taking, apprehending, or seizing persons or property, by virtue of a writ, summons, or other judicial order, and bringing the same into the custody of the court for the purpose of securing satisfaction of the judgment ultimately to be entered in the action." Black's Law Dictionary (5th Ed. 1979) p. 115.

The present case, however, involves a notice of lis pendens that does not entail any actual seizure of property but is simply a notice of pending litigation. While it temporarily deprives the owner of a property inter-

est as previously discussed that is sufficient to trigger due process concern, the degree of deprivation is far lower than the degree of deprivation involved in an ex parte attachment. The notice of lis pendens puts "potential buyers of real estate and creditors of its owners on notice that the real estate may be subject to pending adverse interests that may affect the title or right to the property." *Garcia* v. *Brooks Street Associates,* 209 Conn. 15, 22, 546 A.2d 275 (1988). It "is appropriate only where the pending action will in some way, either directly or indirectly, affect the title to or an interest in the real property itself." Id. The defendant continues to maintain full possession and use of the property. *Chrysler Corporation* v. *Fedders Corporation,* supra, 1321–22. While the notice may have an effect on the defendant's ability to alienate the property, the defendant is not prevented from doing so.

As Chief Justice Rehnquist noted: "The filing of such notice will have an effect upon the defendant's ability to alienate the property, or to obtain additional security on the basis of title to the property, but the effect of the lis pendens is simply to give notice to the world of the remedy being sought in the lawsuit itself. The lis pendens itself creates no additional right in the property on the part of the plaintiff, but simply allows third parties to know that a lawsuit is pending in which the plaintiff is seeking to establish such a right." *Connecticut* v. *Doehr,* supra, 29 (Rehnquist, C. J., concurring). It follows, therefore, that the property interest affected when a notice of lis pendens is recorded is considerably less significant than that affected by a prejudgment attachment. See *Williams* v. *Bartlett,* supra, 479. It appears also that *Connecticut* v. *Doehr,* supra, pertains only to prejudgment attachments and does not apply to the present case.

The second prong of the inquiry requires an examination of the risk of erroneous deprivation through the

procedures under attack and the probable value of additional or alternative safeguards. Neither the risk of erroneous deprivation under Connecticut's lis pendens statute nor the probable value of additional or alternative safeguards is great enough to warrant requiring a predeprivation hearing.

In the present case, the risk of erroneous deprivation is far lower than the risk that was present in *Connecticut* v. *Doehr,* supra, where the plaintiff sought the attachment of the defendant's house as security for a possible judgment on an assault and battery claim. The court's analysis of the risk of erroneous deprivation was based on the fact that the underlying claim was based on an alleged assault. The court noted that "[u]nlike determining the existence of a debt or delinquent payments, the issue does not concern 'ordinarily uncomplicated matters that lend themselves to documentary proof.' " *Connecticut* v. *Doehr,* supra, 14, quoting *Mitchell* v. *W. T. Grant Co.,* 416 U.S. 600, 609, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974). The attachment is made contingent upon the likelihood that judgment will be rendered in favor of the plaintiff. General Statutes § 52-278e (a). The court found that the statute permitted a court to authorize "attachment merely because the plaintiff believes the defendant is liable, or because the plaintiff can make out a facially valid complaint, [which] would permit the deprivation of the defendant's property when the claim would fail to convince a jury . . . . " *Connecticut* v. *Doehr,* supra, 13–14. Furthermore, "only a skeletal affidavit" was filed in *Connecticut* v. *Doehr,* supra, and the court there found that under those particular circumstances, the potential for unwarranted attachment was too great to satisfy the requirements of due process absent any countervailing consideration. Id.

In the present case, for the purposes of this issue, the parties have agreed that the existence of the under-

lying debt may be assumed. Thus, here the risk of erroneous deprivation is low because "disputes between debtors and creditors more readily lend themselves to accurate ex parte assessments of the merits" while tort actions do not. Id., 17. Furthermore, a notice of lis pendens may be filed only when there is a pending action affecting the title, rights or interest in real estate. General Statutes § 52-325; *Chrysler Corporation* v. *Fedders Corporation,* supra, 1329. Such a notice may not be filed as security for unrelated claims but only when there is an interest in the realty in question. Id. Therefore, since the existence and amount of the claim easily lend themselves to documentary proof, the risk of error and the need for additional or alternative safeguards are greatly reduced.

The defendant also argues that the probable cause standard provided for in General Statutes § 52-325b is unconstitutionally vague. A party challenging the constitutionality of a statute has a heavy burden. *Davis* v. *Yudkin,* 3 Conn. App. 576, 579, 495 A.2d 714, cert. denied, 197 Conn. 805, 499 A.2d 57 (1985). That party must show that the statute is unconstitutional beyond a reasonable doubt. Id.

The defendant makes no argument other than to quote language contained in *Doehr* as well as *Republic National Bank of New York* v. *Hill,* Superior Court, judicial district of Stamford-Norwalk, Docket No. 119071S (November 25, 1991, 5 Conn. L. Rptr. 209), which relies on the language in *Doehr.* While these two cases discuss the probable cause standard provided for in General Statutes § 52-278, the standard is similar to that contained in § 52-325b. Three recent Superior Court cases, however, have held that the probable cause standard in § 52-278 is not unconstitutional. *Stamford Computer Group, Inc.* v. *Leep Associates Ltd. Partnership,* Superior Court, judicial district of Stamford-Norwalk, Docket No. 102140 (January 3, 1992, 5 Conn.

L. Rptr. 557); *M & L Building Corporation* v. *CNF Industries, Inc.,* Superior Court, judicial district of Rockville, Docket No. 49244 (February 3, 1992, 5 Conn. L. Rptr. 509); *Halloran* v. *Byington,* Superior Court, judicial district of Bridgeport, Docket No. 286531 (October 30, 1991, 5 Conn. L. Rptr. 161).

These courts found that the language quoted in *Doehr* is dicta. *Stamford Computer Group, Inc.* v. *Leep Associates Ltd. Partnership,* supra, 557; *M & L Building Corporation* v. *CNF Industries, Inc.,* supra, 510–11; *Halloran* v. *Byington,* supra, 162. " 'The court was not called upon to decide whether the probable cause standard as interpreted by the Connecticut Supreme Court violated federal due process.' " *M & L Building Corporation* v. *CNF Industries, Inc.,* supra, 510, quoting *Halloran* v. *Byington,* supra. The court in *Connecticut* v. *Doehr,* supra, 13, found it unnecessary to undertake the resolution of the question since the statute allowing ex parte attachment presented too great a risk of erroneous deprivation under any of the interpretations proposed by the parties. *Stamford Computer Group, Inc.* v. *Leep Associates Ltd. Partnership,* supra, 557. Therefore, *Connecticut* v. *Doehr,* supra, does not govern the present case as to the issue of the constitutionality of the probable cause standard. It necessarily follows that the defendant has failed to demonstrate beyond a reasonable doubt that the lis pendens statute's probable cause standard is unconstitutionally vague.

The third consideration in determining the process due is the interest of the party seeking the notice of lis pendens with due regard for any ancillary interest the government may have in providing the procedure or foregoing the added burden of providing greater protections. In *Connecticut* v. *Doehr,* supra, 2116, the court found that the plaintiff's interests in an ex parte attachment were minimal because the plaintiff had no exist-

ing interest in the Doehr real estate other than to satisfy his judgment if he prevailed on the merits of his action. Since a notice of lis pendens may be filed only when there is a pending action affecting the title, rights or interest in real property, whenever such a notice is filed, both parties have an "existing interest" in the realty. It follows, therefore, that whenever a notice of lis pendens is recorded, since both parties have an existing interest in the real property itself, the interest of any party seeking to record the notice is very significant. The court concludes that the plaintiff in the present case has an *existing* interest in the property itself and a strong interest in ensuring that its claim is "not defeated by a prejudgment transfer of the property." *Chrysler Corporation* v. *Fedders Corporation,* supra, 1328.

In addition, in the present case, the existence of exigent circumstances must be considered. *Connecticut* v. *Doehr,* supra, 17. The court in *Connecticut* v. *Doehr,* supra, noted in particular that "there was no allegation that Doehr was about to transfer or encumber his real estate or take any other action . . . that would render his real estate unavailable to satisfy a judgment." Id., 16. The United States Supreme Court has "recognized such a properly supported claim would be an exigent circumstance permitting postponing any notice or hearing until after the attachment is effected. . . . Absent such allegations, however, the plaintiff's interest in attaching the property does not justify the burdening of Doehr's ownership rights without a hearing to determine the likelihood of recovery." Id.

In the present case, the plaintiff has alleged exigent circumstances that justify the burdening of the defendant's ownership rights without a prior hearing. The plaintiff alleges the fraudulent conveyance of thirty-four units. It appears that the defendant has already

sold fourteen or fifteen of those units, and may attempt to sell the remaining units while litigation is pending. The presence of these factors distinguishes the interest of the party seeking to record a notice of lis pendens in the present case from the interest of the party seeking the attachment in *Doehr*. The plaintiff has a strong interest in recording the notice of lis pendens, therefore, and this strong interest is heightened by the presence of exigent circumstances.

The final consideration is the government's interest in providing the procedure and in foregoing the added burden of greater protection. The government has a strong interest in allowing parties to record a notice of lis pendens without a predeprivation hearing. "If the power of the courts to determine the rights of the parties to real property could be defeated by its transfer, [during litigation], to a purchaser without notice, additional litigation would be spawned and the public's confidence in the judicial process could be undermined." *Chrysler Corporation* v. *Fedders Corporation,* supra, 1329. The notice of lis pendens, thus, serves an important purpose in preserving "the subject matter of the litigation so that courts could render an effective final judgment." Id., 1319.

The state has an additional interest in assuring that potential purchasers be able to ascertain whether there is a claim affecting the property. Id., 1329. The notice of lis pendens ensures the full disclosure of claims to the property, and " 'does nothing that a conscientious seller of property would not do as a matter of course.' " Id., quoting *Debral Realty, Inc.* v. *DiChiara,* 383 Mass. 559, 566, 420 N.E.2d 343 (1981).

The court concludes that a predeprivation hearing is not warranted. The property interest affected, while significant enough to trigger due process concerns, is not significant enough to warrant greater protection

than an immediate postdeprivation hearing in light of the fact that the risk of erroneous deprivation is low, and that the plaintiff in the present case is faced with exigent circumstances. Furthermore, the government has a strong public policy interest in assuring that the final judgments of its courts are effective and that parties are not provided with the opportunity to circumvent judgments by transferring property. The minimum process constitutionally due, therefore, is the opportunity for an immediate postdeprivation hearing.

Since Connecticut's lis pendens statute provides such process, it is constitutional and SVFLP's motion to discharge notice of lis pendens is denied.