******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# FAIRLAKE CAPITAL, LLC *v.* PETER LATHOURIS ET AL.
## (AC 44622)

Bright, C. J., and Prescott, Elgo, Moll, Cradle, Alexander, Suarez, Clark and DiPentima, Js.

*Syllabus*

The defendant N Co. appealed to this court challenging the trial court's denial of its motions to terminate a stay of the proceedings and to discharge a notice of lis pendens that the plaintiff lender had recorded against certain of N Co.'s real property. The plaintiff brought this action seeking the avoidance of what it alleged were a fraudulent transfer of the property to N Co. by the defendants P and L, and a fraudulent mortgage loan to N Co. by the defendant C Co. The trial court, upon the agreement of the parties, stayed the action pending the resolution of a prior, separate action the plaintiff had brought against P and L, alleging breach of guaranty and unjust enrichment in connection with their transfer of the property to N Co. N Co. thereafter filed motions to terminate the stay and to discharge the notice of lis pendens, alleging that the plaintiff lacked probable cause to sustain its claims. The court denied both motions, reasoning that the stay precluded it from adjudicating the motion to discharge the notice of lis pendens. While N Co.'s appeal from the trial court's orders was pending, this court denied a motion the plaintiff filed to dismiss the appeal for lack of a final judgment. On appeal, N Co. claimed that the denial of its motion to discharge was a final judgment and that the trial court improperly relied on the stay to decline to conduct a statutorily (§§ 52-325a and 52-325b) required hearing on the motion to discharge. *Held*:

1. The trial court's denial of N Co.'s motion to discharge the notice of lis pendens was an appealable final judgment, and the court abused its discretion in relying on the discretionary stay to decline to conduct the hearing to adjudicate the merits of the motion to discharge under §§ 52-325a and 52-325b:

   a. Although the denial of N Co.'s motion to discharge the notice of lis pendens was an interlocutory order, the governing statutory (§ 52-325c (a)) provision plainly states that any order entered as provided in § 52-325b (b) constitutes a final judgment for purposes of appeal; moreover, contrary to the plaintiff's claim that the court's order denying the motion was not a final judgment because the court never heard the motion on the merits, this court did not believe that the legislature drafted §§ 52-325a, 52-325b and 52-325c to deprive a party of a right to appeal when a probable cause hearing was not held and the required findings were not made, as the right to a probable cause hearing exists to protect the constitutional rights of property owners such as N Co., which explicitly raised its constitutional right to a prompt hearing; furthermore, the court's denial of N Co.'s motion to discharge because it exercised its discretion not to lift the stay did not alter the fact that N Co. had a statutory right to appeal, and this court determined that it could reach the trial court's denial of N Co.'s motion to lift the stay, which, although not a final judgment itself, was inextricably intertwined with the final judgment that resulted from the court's denial of the motion to discharge.

   b. The trial court abused its discretion when it denied the request by N Co. to lift the temporary stay for the purpose of going forward with a hearing on its motion to discharge the notice of lis pendens; the motion to discharge was not subject to a discretionary stay of indeterminate length, and to conclude that the stay could preclude the adjudication of the merits of the motion to discharge would undermine N Co.'s constitutional right to procedural due process to be heard on the motion at a meaningful time in a meaningful manner and its statutory right to a prompt hearing.

2. This court's determination that the trial court erred in denying N Co.'s motion to discharge the notice of lis pendens by improperly relying on the discretionary stay necessarily resolved the question of whether the court should have lifted the stay to permit a hearing to proceed on the

motion to discharge; accordingly, the discretionary stay was ordered lifted for the limited purpose of considering the merits of and conducting a hearing on N Co.'s motion to discharge.

(*Two judges concurring in part and dissenting in part in one opinion*)

Argued April 14—officially released August 30, 2022

*Procedural History*

Action to recover damages for the defendants' alleged fraudulent transfer of certain real property owned by the defendant Number Six, LLC, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the Complex Litigation Docket; thereafter, the court, *Lee, J.*, issued an order staying the action; subsequently, the court, *Ozalis, J.*, denied the motions filed by the defendant Number Six, LLC, to terminate the stay and to discharge a notice of lis pendens filed against certain of its real property, and the defendant Number Six, LLC, appealed to this court; thereafter, this court denied the plaintiff's motion to dismiss the appeal for lack of a final judgment. *Reversed*; *remanded with direction*.

*Danielle J. B. Edwards*, with whom, on the brief, was *Peter V. Lathouris*, for the appellant (defendant Number Six, LLC).

*Patrick McCabe*, with whom, on the brief, was *Yan Margolin*, pro hac vice, for the appellee (plaintiff).

*Opinion*

BRIGHT, C. J. The defendant Number Six, LLC (Number Six), appeals from the order of the trial court denying its motion to discharge a notice of lis pendens (motion to discharge) recorded by the plaintiff, Fairlake Capital, LLC.[1] Number Six also appeals from the order of the court denying its motion to lift a discretionary stay in the underlying proceedings to allow it to pursue the motion to discharge. Our disposition of this appeal hinges on two issues that concern the denial of the motion to discharge. First, as a threshold matter implicating our subject matter jurisdiction, we must determine whether the denial of the motion to discharge is a final judgment for appeal purposes. If we answer that question in the affirmative, the second issue is whether the court abused its discretion by denying the motion to discharge, without holding a hearing and adjudicating the merits of the motion in accordance with General Statutes §§ 52-325a and 52-325b, solely on the procedural ground that the discretionary stay was in place. Number Six claims that the denial of the motion to discharge is a final judgment and that the court improperly denied the motion to discharge on the basis of the discretionary stay. The plaintiff, on the other hand, maintains that (1) no final judgment exists, or, alternatively, (2) the court properly denied the motion to discharge on the basis of the discretionary stay. We conclude that (1) the denial of the motion to discharge is a final judgment for appeal purposes and (2) the court abused its discretion when it relied on the discretionary stay to deny Number Six's motion to discharge.[2] We further conclude that our resolution of Number Six's claim concerning its motion to discharge necessarily resolves the question of whether the court should have lifted the discretionary stay to permit a hearing on that motion.[3]

The following facts and procedural history are relevant to our resolution of this appeal. On August 1, 2017, the plaintiff commenced the present action against Peter Lathouris (Peter), Patricia Spanos Lathouris (Patricia), Continental Mortgage Banking, Ltd. (Continental), and Number Six. The plaintiff's four count complaint asserts claims of fraudulent transfer against the defendants in violation of the Connecticut Uniform Fraudulent Transfer Act (CUFTA), General Statutes § 52-552a et seq., against the defendants.[4]

In support of those claims, the plaintiff alleged the following facts in its complaint. In April, 2017, the plaintiff commenced an action against Peter and Patricia claiming breach of guaranty and unjust enrichment. See *Fairlake Capital, LLC* v. *Lathouris*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-17-6031982-S (August 13, 2019) (69 Conn. L. Rptr. 168) (guaranty action), aff'd, 210 Conn. App. 801, 271 A.3d 689, cert. denied, 343

Conn. 928, A.3d (2022). On May 12, 2017, Peter and Patricia purchased real property located in New Canaan (property) for $1.9 million. That same day, for consideration in the sum of one dollar, Peter and Patricia quitclaimed the property to Number Six, which was formed two days before the sale and which at all relevant times was owned, controlled, or dominated by Peter and/or Patricia. Additionally, on May 12, 2017, Continental, which was formed in 1990 and which is owned, operated, managed, or dominated by Peter and/or Patricia, extended a mortgage loan to Number Six in the sum of $2.5 million. A portion of the mortgage loan was used to pay the sellers of the property, with Number Six retaining the balance of the funds. As relief, the plaintiff seeks, inter alia, avoidance of the alleged fraudulent transfer of the property and of the alleged fraudulent mortgage loan.

The parties do not dispute that the plaintiff, on the basis of its fraudulent conveyance claims, recorded a notice of lis pendens against the property. The plaintiff appended a copy of the notice of lis pendens, dated July 28, 2017, to its complaint.

On October 15, 2018, the plaintiff filed a motion to stay the present action pending the resolution of the guaranty action, which, according to the plaintiff, was scheduled at the time to be tried in April, 2019. On December 14, 2018, after initially having objected to the motion to stay, the defendants consented to the trial court staying the present action for three months. On January 14, 2019, the court, *Lee, J.*, upon the parties' consent, stayed the present action until March 15, 2019.

On October 31, 2019, the defendants filed a motion to terminate the discretionary stay, contending that, since March 15, 2019, the present action had been "informally stayed by agreement with the consent of the court" but that they no longer assented to the stay.[5] On December 3, 2019, the plaintiff filed an objection. On January 9, 2020, the court denied the defendants' motion, determining that "[t]he rationale for the original stay of this action remains valid. The resolution of this case is heavily dependent upon the result of the trial on the merits in [the guaranty action]. As a result, the possibility of an inconsistent result is substantial. The continuation of the stay until the [guaranty action] is resolved will promote judicial economy."

On August 21, 2020, Number Six filed a motion to terminate the discretionary stay, asserting that it intended to file, inter alia, a motion to discharge the notice of lis pendens that the plaintiff had recorded against the property. Number Six stated that an appeal had been filed in the guaranty action, thereby delaying resolution of that separate matter.[6] On September 14, 2020, the plaintiff filed an objection, arguing, inter alia, that any delays in the guaranty action were caused by Peter and Patricia and that there had been no change

in circumstances warranting a termination of the stay. On September 18, 2020, Number Six filed a reply brief. On September 21, 2020, the court, *Ozalis*, *J.*, denied Number Six's motion and sustained the plaintiff's objection "[f]or the reasons stated in the plaintiff's objection . . . and as the rationale for the original stay of this action remains . . . ." On October 29, 2020, Number Six filed a motion to reargue, which the court summarily denied on December 2, 2020.

On February 16, 2021, Number Six filed the motion to terminate stay at issue in this appeal, requesting that the discretionary stay be lifted for the limited purpose of enabling it to file a motion to discharge the notice of lis pendens. That same day, Number Six filed the motion to discharge, claiming that (1) the plaintiff lacks probable cause to sustain the validity of its claims asserted against Number Six and (2) the notice of lis pendens is defective and, thus, "void and of no force or effect." On March 12, 2021, the plaintiff filed a combined objection to both motions. On March 24, 2021, Number Six filed a reply brief. On March 29, 2021, the court summarily denied both motions and, in addition, summarily sustained the plaintiff's objection. On April 1, 2021, Number Six filed this appeal challenging the denials of both motions.

On June 22, 2021, the plaintiff filed with this court a corrected motion to dismiss this appeal for lack of a final judgment.[7] On July 2, 2021, Number Six filed an objection. On July 28, 2021, while the corrected motion to dismiss was pending, this court, sua sponte, ordered the trial court to articulate whether its denial of the motion to discharge and its order sustaining the plaintiff's objection "were based on the merits or were procedural because of the stay of this case." On July 29, 2021, the trial court articulated that the "orders denying the motion to discharge and sustaining the objection thereto were procedural because of the stay of this case." That same day, this court granted the plaintiff's corrected motion to dismiss this appeal for lack of a final judgment.

On August 9, 2021, Number Six filed a motion to reconsider this court's judgment of dismissal. On August 17, 2021, the plaintiff filed an objection. On September 3, 2021, while the motion to reconsider was pending, this court ordered, sua sponte, the parties to file supplemental memoranda to address the following two issues: (1) whether, in light of the trial court's articulation stating that its denial of the motion to discharge was " 'procedural,' " our Supreme Court's decision in *Ahneman* v. *Ahneman*, 243 Conn. 471, 706 A.2d 960 (1998), "appl[ies] such that [Number Six], as to the denial of the motion to discharge . . . has filed its appeal from a final judgment"; and (2) "[i]f this court concludes that [Number Six] has appealed from a final judgment as to the denial of the motion to discharge

. . . because *Ahneman* applies, [whether] this court [should] remand the case for a prompt hearing on the motion to discharge, or [whether] there [are] other issues in this appeal that would remain to be addressed as to the denial of that motion . . . .'' The parties filed supplemental memoranda in accordance with our briefing order.

On October 6, 2021, we granted the motion to reconsider and denied the corrected motion to dismiss without prejudice to the parties addressing the final judgment issue in their respective appellate briefs,[8] as augmented by their supplemental memoranda. In addition, we ordered that this appeal would be heard en banc.

I

We first address the portion of this appeal taken from the trial court's denial of the motion to discharge based solely on the existence of a discretionary stay of the underlying proceedings.[9] Number Six claims that (1) the denial of the motion to discharge is a final judgment for appeal purposes and (2) the court, in denying the motion to discharge, improperly relied on the stay to decline to hold a hearing and to address the merits of the motion pursuant to §§ 52-325a and 52-325b. The plaintiff maintains that (1) there is no final judgment or, in the alternative, (2) the court correctly denied the motion to discharge based on the stay. For the reasons that follow, we conclude that (1) the denial of the motion to discharge is an appealable final judgment and (2) the court abused its discretion when it relied on the discretionary stay to decline to conduct a hearing and to adjudicate the merits of the motion to discharge in accordance with §§ 52-325a and 52-325b.

Before analyzing Number Six's claims, we briefly clarify the scope of its appeal as to the denial of the motion to discharge. In the motion to discharge, Number Six raised the following two independent grounds to support its motion: (1) the plaintiff lacks probable cause to sustain the validity of its claims against Number Six; and (2) the notice of lis pendens is defective and, thus, ''void and of no force or effect.'' These distinct grounds are governed by different statutory provisions. See *Dunham* v. *Dunham*, 217 Conn. 24, 35–38, 584 A.2d 445 (1991) (''When a property owner challenges the existence of probable cause for the validity of the lis pendens claim, resolution of this application for discharge is governed by General Statutes §§ 52-325a, 52-325b and 52-325c. . . . When, however, a property owner files a motion for discharge alleging an invalid notice of lis pendens, resolution of this motion is governed in its entirety by General Statutes § 52-325d.'' (Footnote omitted.)), overruled on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 682 A.2d 106 (1996).

In its appellate briefs, Number Six argues that the court precluded it from "holding the plaintiff to its proof" on the issue of probable cause. Number Six also cites §§ 52-325a and 52-325b, which are relevant to its probable cause claim, but it does not refer to § 52-325d, which applies to the second ground in its motion, i.e., that the notice of lis pendens is defective. Moreover, in its principal appellate brief, Number Six raises an argument addressing the merits of whether probable cause exists; however, the brief is silent as to the merits of Number Six's claim that the notice of lis pendens is "void and of no force or effect" because it is defective. Finally, unlike an order based on § 52-325b, an order based on § 52-325d is not an immediately appealable final judgment. See *Dunham* v. *Dunham*, supra, 217 Conn. 40. For these reasons, we construe Number Six's claim on appeal as to the denial of the motion to discharge to be limited to its probable cause claim, and we limit our review accordingly.[10] See footnote 19 of this opinion.

In addition, we note that our review of Number Six's claims as to the denial of the motion to discharge requires us to construe statutes governing notices of lis pendens. "The construction of a statute is a question of law subject to de novo review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Citation omitted; internal quotation marks omitted.) *Aldin Associates Ltd. Partnership* v. *State*, 209 Conn. App. 741, 767, 269 A.3d 790 (2022).

A

At the outset, because the issue raises a question regarding our subject matter jurisdiction, we consider whether the denial of the motion to discharge constitutes a final judgment. Number Six argues that, pursuant to the controlling statutes, a denial of a motion to discharge a notice of lis pendens is a final judgment. The

plaintiff argues that the court's order denying the motion is not a final judgment because the court never heard the motion on the merits but, instead, denied it solely because of the stay it had entered in the case. Relying on our Supreme Court's decision in *Prevedini* v. *Mobil Oil Corp.*, 164 Conn. 287, 320 A.2d 797 (1973), the plaintiff argues that the court's order denying the motion to discharge was essentially the court's simply affirming its decision to leave the discretionary stay in place and is thus not an appealable final judgment. We agree with Number Six that the court's denial of the motion to discharge is, by statute, an appealable final judgment. We further conclude that *Prevedini* is inapplicable to the circumstances of this case.

We begin with the applicable legal principles regarding our jurisdiction. "The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear. . . . We therefore must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Citation omitted; internal quotation marks omitted.) *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 459, 239 A.3d 272 (2020). "A determination regarding . . . subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary." (Internal quotation marks omitted.) *Glastonbury* v. *Sakon*, 172 Conn. App. 646, 651, 161 A.3d 657 (2017).

"The jurisdiction of the appellate courts is restricted to appeals from judgments that are final." (Internal quotation marks omitted.) *Wolfork* v. *Yale Medical Group*, supra, 335 Conn. 459. "[T]he legislature may [however] deem otherwise interlocutory actions of the trial courts to be final judgments, as it has done by statute in limited circumstances. . . . Alternatively, the courts may deem interlocutory orders or rulings to have the attributes of a final judgment if they fit within either of the two prongs of the test set forth in *State* v. *Curcio*, [191 Conn. 27, 31, 463 A.2d 566 (1983)]. . . . Under *Curcio*, the landmark case in the refinement of final judgment jurisprudence . . . interlocutory orders are immediately appealable if the order or ruling (1) terminates a separate and distinct proceeding or (2) so concludes the rights of the parties that further proceedings cannot affect them." (Internal quotation marks omitted.) *Niro* v. *Niro*, 314 Conn. 62, 67–68, 100 A.3d 801 (2014).

Here, it is undisputed that the denial of the motion to discharge is an interlocutory ruling. Accordingly, to be considered a final judgment for appeal purposes, the order must be subject to immediate appellate review either (1) by statute or (2) pursuant to the test articulated in *Curcio*. We conclude that, pursuant to the applicable statutes, *any* denial of a motion to discharge a notice of lis pendens under § 52-325b, including denials that occur in the absence of the required probable cause

hearing and finding as to the merits of the motion, constitutes an appealable final judgment.

In discerning whether there is a statutory right to appeal from the denial of the motion to discharge, we focus our attention on the statutory scheme governing applications and motions to discharge notices of lis pendens. Section 52-325a provides in relevant part: "(a) Whenever a notice of lis pendens is recorded against any real property pursuant to subsection (a) of section 52-325, the property owner, if the action has not then been returned to court, may make application, together with a proposed order and summons, to the superior court for the judicial district to which the action is made returnable, or to any judge thereof, that a hearing or hearings be held to determine whether such notice of lis pendens should be discharged. The court or judge shall thereupon order reasonable notice of such application to be given to the plaintiff and shall set a date or dates for the hearing or hearings to be held thereon. . . .

"(c) If the action for which notice of lis pendens was recorded, is pending before any court, the property owner may at any time, unless the application under subsection (a) of this section has previously been ruled upon, move that such notice of lis pendens be discharged of record."

Section 52-325b provides in relevant part: "(a) Upon the hearing held on the application or motion set forth in section 52-325a, the plaintiff shall first be required to establish that there is probable cause to sustain the validity of his claim and, if the action alleges an illegal, invalid or defective transfer of an interest in real property, that the initial illegal, invalid or defective transfer of an interest in real property occurred less than sixty years prior to the commencement of the action. . . .

"(b) Upon consideration of the facts before it, the court or judge may: (1) Deny the application or motion if (A) probable cause to sustain the validity of the claim is established or (B) in an action that alleges an illegal, invalid or defective transfer of an interest in real property, probable cause to sustain the validity of the claim is established and the initial illegal, invalid or defective transfer of an interest in real property occurred less than sixty years prior to the commencement of the action, or (2) order such notice of lis pendens discharged of record if (A) probable cause to sustain the validity of the plaintiff's claim is not established or (B) in an action that alleges an illegal, invalid or defective transfer of an interest in real property, the initial illegal, invalid or defective transfer of an interest in real property occurred sixty years or more prior to the commencement of the action."

Section 52-325c (a) provides: "Any order entered as provided in subsection (b) of section 52-325b shall be

deemed a final judgment for the purpose of appeal." An appeal from an order entered pursuant to § 52-325b (b) is subject to a seven day appeal period.[11] See General Statutes § 52-325c (b).

Section 52-325c (a) plainly states that "[a]ny order *entered as provided in subsection (b) of section 52-325b*" constitutes a final judgment for the purpose of appeal. (Emphasis added.) Section 52-325b (b) expressly delineates two orders that a trial court may enter on an application or a motion to discharge a notice of lis pendens after conducting a prompt hearing and upon considering the facts before the court. Specifically, the court may either (1) deny the application or motion if probable cause is established and, in an action alleging an illegal, invalid, or defective transfer of an interest in real property, the alleged transfer occurred less than sixty years prior to the commencement of the action; see General Statutes § 52-325b (b) (1); or (2) issue an order discharging the notice of lis pendens if probable cause is not established or, in an action alleging an illegal, invalid, or defective transfer of an interest in real property, the alleged transfer occurred sixty years or more prior to the commencement of the action. General Statutes § 52-325b (b) (2).

Although, read together, §§ 52-325a, 52-325b and 52-325c contemplate that the court will hold a hearing and make probable cause findings before ruling on a motion to discharge a notice of lis pendens, we do not construe those statutes as requiring a hearing and findings in order for the denial of such a motion to be an appealable final judgment. "We often have stated that it is axiomatic that those who promulgate statutes . . . do not intend to promulgate statutes . . . that lead to absurd consequences or bizarre results." (Internal quotation marks omitted.) *Raftopol* v. *Ramey*, 299 Conn. 681, 703, 12 A.3d 783 (2011). Accordingly, we will not construe statutes in a way that will lead to such results. See id.; see also *Derrane* v. *Hartford*, 295 Conn. 35, 46 n.9, 988 A.2d 297 (2010) (declining to interpret statute in way that would lead to unworkable result because such result was "surely not what the legislature intended"); *In re Corey E.*, 40 Conn. App. 366, 374, 671 A.2d 396 (1996) (interpreting statute so as to avoid "bizarre and unworkable results and [advance] the policies that underpin the statute").

The legislature clearly intended for interlocutory orders denying a motion to discharge a notice of lis pendens to be immediately appealable. Although the legislature also intended that the Superior Court conduct a hearing and make findings before issuing such an order, it would make little sense to read §§ 52-325a, 52-325b and 52-325c as limiting appeals to those orders issued only after a hearing. Such an interpretation effectively would permit a trial court to thwart a party's right to appeal simply by not holding the required hearing.

This outcome cannot be what the legislature intended when it drafted this statutory scheme. See *Derrane* v. *Hartford*, supra, 295 Conn. 46 n.9. In fact, it makes no sense that a party deprived of the process contemplated by the statutes would have fewer appellate rights than a party who was provided with the statutorily required process. Consequently, we do not believe that the legislature drafted §§ 52-325a, 52-325b and 52-325c to deprive a party of a right to appeal from the denial of a motion to discharge a notice of lis pendens in cases in which a probable cause hearing was not held and the required findings not made, given that (1) such a hearing and probable cause findings are statutorily required; see General Statutes §§ 52-325a and 52-325b; and (2) the right to a probable cause hearing exists specifically to protect the constitutional rights of property owners. See part I B of this opinion. Thus, we conclude that *any* denial of a motion to discharge a notice of lis pendens that challenged the existence of probable cause constitutes a final judgment under § 52-325b (b) (1).

We also are not persuaded by the plaintiff's argument that our Supreme Court's decision in *Prevedini* v. *Mobil Oil Corp.*, supra, 164 Conn. 287, requires a different result. In *Prevedini*, the Mobil Oil Corporation (Mobil) leased property for a gas station from the plaintiff, Val Prevedini, for several years. *Prevedini* v. *Mobil Oil Corp.*, supra, 288. During the lease period, Prevedini sold the property to another person. Id., 289. Thereafter, Mobil commenced a civil action to enforce its right to buy the property under its lease agreement with Prevedini. Id., 290. Prevedini then commenced a summary process action against Mobil seeking possession of the property because the lease had expired. Id. The trial court stayed the summary process proceedings, which concerned possession of the property, until the final adjudication of the civil action, which concerned the title to the property and would necessarily resolve the question of the right to possession. Id., 291. Prevedini sought appellate review of the stay order from the Appellate Division of the Superior Court. Id. Mobil claimed that the Appellate Division lacked jurisdiction over the appeal because there was no final judgment. Id. The Appellate Division vacated the stay order, and Mobil appealed to our Supreme Court. Id.

On appeal, our Supreme Court determined that the trial court's order staying the summary process action did not constitute a final judgment because the order did not determine finally the rights of the parties. The court held: "[T]he rights of the parties are not concluded so that further proceedings after the rendition of the stay order cannot affect them. There remains to be determined the very issue for which the summary process action was brought, namely, the question of possession of the premises. When that is resolved, following a trial before the Circuit Court, then a final judgment

will result. The order of the Circuit Court is not a final judgment from which an appeal lies and the Appellate Division in denying Mobil's motion to dismiss for lack of jurisdiction and in vacating the stay of proceedings ordered by the Circuit Court was in error." Id., 293–94.

The plaintiff argues that the holding of *Prevedini* applies in this case because the court did not resolve Number Six's motion to discharge on the merits but merely delayed resolution of the motion while the case is stayed. It argues that, when the court eventually hears the merits, and if it denies the motion to discharge, there will then be a final judgment from which Number Six may appeal. We are not persuaded for a number of reasons.

First, as previously discussed in this opinion, Number Six has a statutory right to appeal from the court's denial of the motion to discharge. That the court denied the motion because it exercised its discretion not to lift the stay in the case does not alter this fact.

Second, as explained in part I B of this opinion, the statutory right to a prompt hearing on the motion to discharge has constitutional underpinnings, and Number Six has explicitly raised its constitutional right to a prompt hearing in this appeal. There is no indication in *Prevedini* that such a constitutional claim was made. In fact, the constitutional right to a prompt hearing on a motion to discharge a notice of lis pendens was not recognized by our Supreme Court until its decision in *Kukanskis* v. *Griffith*, 180 Conn. 501, 430 A.2d 21 (1980), which was decided seven years after *Prevedini*.[12]

Finally, in *Prevedini*, the only issue on appeal was the court's stay order. In the present case, however, the court's order denying Number Six's motion to lift the stay so that it could pursue the motion to discharge is inextricably intertwined with the court's order denying the motion to discharge. Consequently, although the court's decision denying the motion to lift the stay is not by itself a final judgment, we may reach it because it is part of the final judgment. See *Aqleh* v. *Cadlerock Joint Venture II*, *L.P.*, 299 Conn. 84, 89, 10 A.3d 498 (2010) ("We recognize that the court's denial of [Cadlerock Joint Venture II, L.P.'s] motion to cite in [Wageeh S.] Aqleh as an additional defendant in the original action is not, by itself, a final judgment. Nevertheless, because that decision is inextricably intertwined with the trial court's ruling granting the application to discharge the attachment, we conclude that the joint appeal is taken from appealable final judgments."). Accordingly, in the present case, the court's order denying Number Six's motion to discharge is a final judgment.[13]

B

We now turn to Number Six's claim on the merits as to the denial of the motion to discharge. Number Six

contends that the court improperly relied on the discretionary stay to decline to hold a hearing and to resolve the merits of the motion in accordance with §§ 52-325a and 52-325b. We agree.

We begin by setting forth the applicable standard of review. Whether the court properly refused to lift the discretionary stay to permit a hearing on the motion to discharge is subject to review for an abuse of discretion. See, e.g., *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 196 Conn. 451, 459, 493 A.2d 229 (1985) ("[w]e have vested a large measure of discretion in trial judges in terminating or granting stays and, upon review, the issue usually is whether that discretion has been abused"). "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court . . . . Under that standard, we must make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Our] review of such rulings is limited to the questions of whether the trial court *correctly applied the law* and reasonably could have reached the conclusion that it did." (Citation omitted; emphasis added; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 135 Conn. App. 167, 190–91, 43 A.3d 679, cert. denied, 307 Conn. 905, 53 A.3d 220 (2012); see also *Ghio* v. *Liberty Ins. Underwriters, Inc.*, 212 Conn. App. 754, 778, 276 A.3d 984 (2022) ("[t]he trial court's exercise of its discretion will be reversed only [when] the abuse of discretion is manifest or [when] injustice appears to have been done" (internal quotation marks omitted)).

We next summarize some important historical background underlying the statutory scheme governing notices of lis pendens. General Statutes § 52-325[14] establishes the procedure for recording a notice of lis pendens. In *Kukanskis* v. *Griffith*, supra, 180 Conn. 501, in considering a claim that the trial court had dissolved without statutory authority a notice of lis pendens, our Supreme Court addressed whether General Statutes (Rev. to 1979) § 52-325[15] was "unconstitutional because it [did] not comply with the due process of law requirements of [the United States and Connecticut constitutions] in that it fail[ed] to provide for notice to property owners and an opportunity for them to be heard at a meaningful time and in a meaningful manner." Id., 506–507. The court observed that "the effect of a notice of lis pendens sufficiently interferes with the alienability of real estate," such that the court was required to determine whether property owners were being afforded the "minimum of due process which is constitutionally required." Id., 509. The court determined that, at the time, "the Connecticut lis pendens statutes fail[ed] to provide even the barest minimum of due process protection.[16] Most conspicuously absent [was] any provision whatsoever for any sort of a timely hear-

ing, either before or after the recording of the notice of lis pendens, which would give the property owner an opportunity to be heard or require the party recording the notice to demonstrate in any way the probability of prevailing on the underlying action. The statutes allow[ed] the notice of lis pendens to continue indefinitely without any further action on the part of the party recording it, during which time the property owner [was] without recourse to the courts to contest the merits of the underlying claim." (Footnote added.) Id., 510. In sum, the court concluded that the "absence of a statutory provision for a hearing for the defendant property owner at a meaningful time and in a meaningful manner . . . deprived him of his constitutional right to due process of law." (Citation omitted; internal quotation marks omitted.) Id., 510–11.

In 1981, following *Kukanskis*, our legislature enacted No. 81-8 of the 1981 Public Acts (P.A. 81-8), which amended General Statutes (Rev. to 1979) § 52-325 to include language later codified, in part, in §§ 52-325a and 52-325b. See Public Acts 1981, No. 81-8, §§ 2 and 3; see also part I A of this opinion. Two years later, our Supreme Court in *Williams* v. *Bartlett*, 189 Conn. 471, 457 A.2d 290, appeal dismissed, 464 U.S. 801, 104 S. Ct. 46, 78 L. Ed. 2d 67 (1983), addressed whether § 52-325, as amended by P.A. 81-8, was constitutionally infirm on procedural due process grounds because, although it provided for a postfiling hearing, it failed to "contain a bonding provision or any other mechanism whereby the property owner may substitute security to obtain release of the [notice of] lis pendens . . . ." Id., 476. The court concluded that the amended statute met the minimum requirements of procedural due process. Id., 480–81 and 481 n.6. Notably, in examining the amended statute, the court commented that "[t]he *prompt postfiling hearing* afforded under the [amended] statute eliminates the risk of an erroneous deprivation of property interests." (Emphasis added.) Id., 480.

We glean two salient principles from *Kukanskis* and/ or *Williams* that guide us in resolving Number Six's claim. First, Number Six's constitutional right to procedural due process requires that it be afforded a hearing to address its probable cause claim raised in the motion to discharge, with such hearing being held "at a meaningful time and in a meaningful manner . . . ." (Internal quotation marks omitted.) Id., 478; *Kukanskis* v. *Griffith*, supra, 180 Conn. 510. Second, the hearing to which Number Six is entitled pursuant to §§ 52-325a and 52-325b must be "prompt . . . ." *Williams* v. *Bartlett*, supra, 189 Conn. 480.[17]

Pursuant to *Kukanskis* and *Williams*, we are compelled to conclude that the court abused its discretion when it denied Number Six's request to lift the stay for the purpose of going forward with a hearing on its motion to discharge. The record demonstrates that the

stay, to which Number Six no longer consented at the time it filed the motion to discharge, is tied to the ongoing proceedings in the guaranty action and, thus, is of indefinite duration. To conclude that the stay could permissibly preclude the adjudication of the merits of the motion to discharge would undermine Number Six's constitutional right to be heard on the motion to discharge "at a meaningful time and in a meaningful manner" (internal quotation marks omitted); id., 478; *Kukanskis* v. *Griffith*, supra, 180 Conn. 510; and its statutory right to a "prompt" hearing on the motion to discharge. *Williams* v. *Bartlett*, supra, 480.

We are mindful of the well established principle that "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." (Internal quotation marks omitted.) *Lee* v. *Harlow, Adams & Friedman, P.C.*, 116 Conn. App. 289, 311–12, 975 A.2d 715 (2009). Our holding does not weaken a court's broad authority to impose a discretionary stay. We merely elucidate that a discretionary stay of indefinite duration cannot function to infringe on a litigant's rights attendant to an application or a motion to discharge a notice of lis pendens as bestowed by §§ 52-325a and 52-325b, as well as constitutional guarantees of procedural due process. We underscore the limited breadth of our holding. In *Kukanskis* and *Williams*, our Supreme Court made clear that a litigant is entitled to swift judicial action with respect to an application or a motion to discharge a notice of lis pendens. Our holding accords with that mandate, and we expressly limit it to the circumstances present in this case.[18]

In sum, we conclude that the motion to discharge is not subject to a discretionary stay of indeterminate length, and, therefore, the court abused its discretion when it relied on the stay to deny the motion to discharge on procedural grounds. On remand, in accordance with §§ 52-325a and 52-325b, the court must conduct a prompt hearing on the motion to discharge and adjudicate the merits of the motion insofar as Number Six claims that there is no probable cause sustaining the validity of the plaintiff's claims.[19]

## II

We next address Number Six's remaining claim that the court improperly denied its motion to terminate the discretionary stay.[20] Our determination in part I of this opinion that the court committed error in denying the motion to discharge by improperly relying on the discretionary stay necessarily resolves the question of whether the court should have lifted the stay to permit the hearing on the motion to discharge to proceed. Accordingly, the discretionary stay must be lifted for

the limited purpose of considering the merits of, and holding a hearing on, Number Six's motion to discharge.

The judgment is reversed as to the denial of Number Six's motion to discharge the notice of lis pendens and the case is remanded with direction to lift the discretionary stay for the purpose of holding a prompt hearing and adjudicating the merits of the motion to discharge in accordance with General Statutes §§ 52-325a and 52-325b and consistent with this opinion.

In this opinion PRESCOTT, ELGO, CRADLE, SUAREZ, CLARK and DiPENTIMA, Js., concurred.

[1] The plaintiff's complaint named Peter Lathouris, Patricia Spanos Lathouris, and Continental Mortgage Banking, Ltd., as additional defendants, but those parties are not participating in this appeal. For clarity, we refer to Peter Lathouris, Patricia Spanos Lathouris, Continental Mortgage Banking, Ltd., and Number Six collectively as the defendants and individually by their names as designated in this opinion.

[2] As we further explain in part I of this opinion, in the motion to discharge, Number Six raised two grounds on which it sought to discharge the notice of lis pendens, only one of which (lack of probable cause) is relevant to this appeal.

[3] On November 22, 2021, Number Six filed a motion to strike portions of the plaintiff's appellate brief that cited the COVID-19 pandemic as a basis supporting the court's denials of the motion to discharge and the motion to terminate stay, arguing that such references were improper. On November 23, 2021, the plaintiff filed an objection. On January 5, 2022, this court denied the motion to strike without prejudice to Number Six raising its arguments supporting the motion to strike in its reply brief. Number Six has reasserted these arguments in its reply brief. In light of our resolution of this appeal, we need not decide whether the plaintiff's references to the COVID-19 pandemic in its appellate brief were improper.

[4] Counts one and two of the complaint assert claims of fraudulent transfer in violation of General Statutes §§ 52-552e and 52-552f of CUFTA, respectively, against Peter, Patricia, and Number Six. Counts three and four of the complaint assert claims of fraudulent transfer in violation of §§ 52-552e and 52-552f of CUFTA, respectively, against all four defendants.

[5] On August 28, 2019, with the defendants' consent, the plaintiff filed a second motion to stay the present action pending the outcome of the guaranty action, in which proceedings were ongoing at the time following the denial of a motion for summary judgment filed by Peter and Patricia. The court did not adjudicate the second motion to stay.

[6] On January 29, 2020, Peter and Patricia appealed from the denial of a motion for summary judgment, predicated in part on the doctrine of res judicata, that they had filed in the guaranty action. See *Fairlake Capital, LLC* v. *Lathouris*, 210 Conn. App. 801, 802–803, 271 A.3d 689, cert. denied, 343 Conn. 928, A.3d (2022). On March 1, 2022, this court affirmed that judgment. See id., 803.

[7] The plaintiff filed its original motion to dismiss this appeal on June 3, 2021, but subsequently withdrew that motion and filed the corrected motion to dismiss to correct an erroneous reference.

[8] Number Six filed its principal appellate brief prior to the October 6, 2021 order. Following the October 6, 2021 order, the plaintiff filed an appellate brief, and, thereafter, Number Six filed a reply brief.

[9] For clarity and ease of discussion, we have reordered the claims as they are set forth in Number Six's brief.

[10] During oral argument, Number Six's counsel made several brief comments regarding purported defects in the notice of lis pendens. We do not infer from these comments that Number Six is challenging the denial of the motion to discharge with respect to its claim that the notice of lis pendens is defective. Assuming arguendo that Number Six's counsel attempted to raise such a claim during oral argument, it is well settled that a party cannot raise a claim on appeal for the first time during oral argument. See, e.g., *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005) ("claims on appeal . . . cannot be raised for the first time at oral argument before the reviewing court"), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006); see also *Traylor* v. *State*, 332 Conn. 789, 809 n.17, 213 A.3d 467 (2019) ("[r]aising a claim at oral argument is not . . . a substitute for

adequately briefing that claim").

[11] Number Six filed this appeal within seven days of the denial of the motion to discharge.

[12] In reaching its conclusion in *Kukanskis* that due process requires that a property owner be permitted to challenge the notice of lis pendens at a meaningful time and in a meaningful manner, the court relied on its decision in *Roundhouse Construction Corp.* v. *Telesco Masons Supplies Co.*, 168 Conn. 371, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976), in which it reached the same conclusion as to mechanic's liens. See *Kukanskis* v. *Griffith*, supra, 180 Conn. 508–509. *Roundhouse Construction Corp.* also was decided after *Prevedini*.

[13] Because we conclude that § 52-325c provides a statutory right to appeal from any denial of a motion to discharge a notice of lis pendens under § 52-325b, we need not determine whether the court's denial of the motion to discharge constitutes a final judgment under either *State* v. *Curcio*, supra, 191 Conn. 31, or *Ahneman* v. *Ahneman*, supra, 243 Conn. 471.

[14] General Statutes § 52-325 provides in relevant part: "(a) In any action in a court of this state or in a court of the United States (1) the plaintiff or his attorney, at the time the action is commenced or afterwards, or (2) a defendant, when he sets up an affirmative cause of action in his answer and demands substantive relief at the time the answer is filed, if the action is intended to affect real property, may cause to be recorded in the office of the town clerk of each town in which the property is situated a notice of lis pendens, containing the names of the parties, the nature and object of the action, the court to which it is returnable and the term, session or return day thereof, the date of the process and the description of the property, except that no such notice may be recorded in an action that alleges an illegal, invalid or defective transfer of an interest in real property unless the complaint or affirmative cause of action contains the date of the initial illegal, invalid or defective transfer of an interest in real property and such transfer has occurred less than sixty years prior to the commencement of such action. Such notice shall, from the time of the recording only, be notice to any person thereafter acquiring any interest in such property of the pendency of the action; and each person whose conveyance or encumbrance is subsequently executed or subsequently recorded or whose interest is thereafter obtained, by descent or otherwise, shall be deemed to be a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the recording of such notice, to the same extent as if he were made a party to the action. . . .

"(c) Notwithstanding the provisions of subsection (a) of this section, in any action except a suit to foreclose a mortgage or other lien, no recorded notice of lis pendens shall be valid or constitute constructive notice thereof unless the party recording such notice, not later than thirty days after such recording, serves a true and attested copy of the recorded notice of lis pendens upon the owner of record of the property affected thereby. . . ."

[15] General Statutes (Rev. to 1979) § 52-325 provides in relevant part: "In any action in a court of this state or in a district court of the United States the plaintiff or his attorney, at the time the action is commenced or afterwards, or a defendant, when he sets up an affirmative cause of action in his answer and demands substantive relief at the time the answer is filed, if the same is intended to affect real estate, may cause to be recorded in the office of the town clerk of each town in which the property is situated a notice of the pendency of the action, containing the names of the parties, the nature and object of the action, the court to which it is returnable and the term, session or return day thereof, the date of the process and the description of the property. Such notice shall, from the time of the recording only, be notice to any person thereafter acquiring any interest in such property of the pendency of the action; and each person whose conveyance or encumbrance is subsequently executed or subsequently recorded or whose interest is thereafter obtained, by descent or otherwise, shall be deemed to be a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the recording of such notice, to the same extent as if he were made a party to the action. . . ."

[16] At the time of *Kukanskis*, as our Supreme Court noted, "[t]he filing of a [notice of] lis pendens require[d] no judicial action, no showing of probable cause and no notice to the defendant property owner. The party filing the [notice of] lis pendens [was] not required to post a bond or provide any surety to protect the owner against damages from an unsupportable claim. No opportunity [was] provided to the owner either before or after the

recording of the [notice of] lis pendens to challenge its propriety. Moreover, no provision [was] made whereby the owner [could] apply for the dissolution of the [notice of] lis pendens upon the substitution of a bond with surety." *Kukanskis* v. *Griffith*, supra, 180 Conn. 507.

[17] The plaintiff argues in its supplemental brief that the constitutional right discussed in *Williams* "is merely to have an 'opportunity to be heard at a meaningful time and in a meaningful manner.' Implicit in the trial court's determination here, in refusing to lift the stay, was a finding that the three and one-half years that elapsed prior to [Number Six's] present motion to discharge was a sufficient *opportunity*, especially given [Number Six's] justifications for discharge—all of which, if true, would have existed since the day the lis pendens was filed." (Emphasis in original.) The plaintiff further argues that Number Six chose to forgo its opportunity by agreeing to the stay in this case. The record does not support the plaintiff's claim that the court made some implicit finding that Number Six waived its right to a prompt hearing. Furthermore, the fact that Number Six may have agreed to a stay of limited duration does not mean that it was forever waiving its statutory and constitutional right to a prompt hearing.

[18] As the COVID-19 pandemic has demonstrated, circumstances outside of the control of courts and litigants may arise that preclude prompt action on an application or a motion to discharge a notice of lis pendens. In the present action, however, there is nothing in the record indicating that there are external forces preventing the court and the parties from moving forward on the motion to discharge.

[19] As we explained in footnote 10 of this opinion and the accompanying text, Number Six has not briefed a claim challenging the denial of the motion to discharge on the basis of the discretionary stay with respect to the second ground raised in the motion asserting that the notice of lis pendens is defective. Accordingly, such a claim is not before us for review, and our remand order does not contain any direction to the court with regard to the second ground. Nevertheless, in the interests of judicial economy, we opine that it would be prudent for the court on remand to address Number Six's claim that the notice of lis pendens is defective in conjunction with the court's consideration of Number Six's probable cause claim.

[20] As discussed previously in this opinion, we properly may consider Number Six's claim concerning its motion to terminate the stay because this claim is inextricably intertwined with its claim that the court erred in denying its motion to discharge, which, as explained previously, is a final judgment. See part I A of this opinion; see also *Clukey* v. *Sweeney*, 112 Conn. App. 534, 542, 963 A.2d 711 (2009) ("in some circumstances, the factual and legal issues raised by a legal argument, the appealability of which is doubtful, may be so inextricably intertwined with another argument, the appealability of which is established that we should assume jurisdiction over both" (internal quotation marks omitted)); see also *Collins* v. *Anthem Health Plans, Inc.*, 266 Conn. 12, 29–30, 836 A.2d 1124 (2003) (permitting interlocutory appeal for certain claims when inextricably intertwined with other claims that were subject to interlocutory appeal pursuant to statute).

———————————————